**BRODSKY & SMITH**
Evan J. Smith, Esquire (SBN 242352)
esmith@brodskysmith.com
Ryan P. Cardona, Esquire (SBN 302113)
rcardona@brodskysmith.com
9595 Wilshire Boulevard, Suite 900
Beverly Hills, CA 90212
Phone: (877) 534-2590
Facsimile: (310) 247-0160

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GABRIEL ESPINOZA, | Case No.: |
| Plaintiff, | **Complaint For:** |
| vs. | (1) Breach of Fiduciary Duties |
| VOCERA COMMUNICATIONS, INC., JOHN N. MCMULLEN, SHARON L. O'KEEFE, MIKE BURKLAND, RONALD A. PAULUS, BHARAT SUNDARAM, JULIE ISKOW, BRENT D. LANG, ALEXA KING, and HOWARD E. JANZEN, | (2) Aiding and Abetting Breach of Fiduciary Duties<br>(3) Violation of § 14 (e) of the Securities Exchange Act of 1934<br>(4) Violation of § 14 (d) of the Securities Exchange Act of 1934<br>(5) Violation of § 20(a) of the Securities Exchange Act of 1934 |
| Defendants. | **JURY TRIAL DEMANDED** |

Plaintiff, Gabriel Espinoza ("Plaintiff"), by and through his attorneys, alleges upon information and belief, except for those allegations that pertain to him, which are alleged upon personal knowledge, as follows:

**SUMMARY OF THE ACTION**

1.      Plaintiff brings this stockholder action against Vocera Communications, Inc. ("Vocera" or the "Company") and the Company's Board of Directors (the "Board" or the "Individual Defendants," collectively with the Company, the "Defendants"), for breaches of fiduciary duty and for violations of Sections 14(e), 14(d) and 20(a) of the Securities and Exchange

Act of 1934 (the "Exchange Act") as a result of Defendants' efforts to sell the Company to Stryker Corporation, Inc. ("Parent") through merger vehicle Voice Merger Sub Corp. ("Merger Sub") (collectively with "Parent," "Stryker") as a result of an unfair process, and to enjoin an upcoming tender off on a proposed all cash transaction (the "Proposed Transaction").

2.      The terms of the Proposed Transaction were memorialized in a January 6, 2022, filing with the Securities and Exchange Commission ("SEC") on Form 8-K attaching the definitive Agreement and Plan of Merger (the "Merger Agreement"). Under the terms of the Merger Agreement, Stryker will acquire all of the remaining outstanding shares of Vocera' common stock at a price of $79.25 per share in cash.  As a result, Vocera will become an indirect wholly-owned subsidiary of Stryker.

3.      Thereafter, on January 25, 2022, Vocera filed a Solicitation/Recommendation Statement on Schedule 14D-9 (the "Recommendation Statement") with the SEC in support of the Proposed Transaction.

4.      In approving the Proposed Transaction, the Individual Defendants have breached their fiduciary duties of loyalty, good faith, due care and disclosure by, *inter alia*, (i) agreeing to sell Vocera without first taking steps to ensure that Plaintiff in his capacity as a public Company stockholder would obtain adequate, fair and maximum consideration under the circumstances; and (ii) engineering the Proposed Transaction to benefit themselves and/or Vocera without regard for Plaintiff in his capacity as a public Company stockholder.  Accordingly, this action seeks to enjoin the Proposed Transaction and compel the Individual Defendants to properly exercise their fiduciary duties to Plaintiff in his capacity as a public Company stockholder.

5.      Next, it appears as though the Board has entered into the Proposed Transaction to procure for itself and senior management of the Company significant and immediate benefits with no thought to Plaintiff as a public stockholder.  For instance, pursuant to the terms of the Merger Agreement, upon the consummation of the Proposed Transaction, Company Board Members and executive officers will be able to exchange all Company equity awards for the merger consideration.

6.     In violation of the Exchange Act, Defendants caused to be filed the materially deficient Recommendation Statement on January 25, 2022, with the SEC in an effort to solicit stockholders, including Plaintiff, to tender their Vocera shares in favor of the Proposed Transaction.  The Recommendation Statement is materially deficient, deprives Plaintiff of the information necessary to make an intelligent, informed and rational decision of whether to tender in favor of the Proposed Transaction, and is thus in violation of the Exchange Act.  As detailed below, the Recommendation Statement omits and/or misrepresents material information concerning, among other things: (a) the sales process and in particular certain conflicts of interest for management; (b) the financial projections for Vocera, provided by Vocera to the Company's financial advisors Evercore Group, L.L.C. ("Evercore"); and (c) the data and inputs underlying the financial valuation analyses, if any, that purport to support the fairness opinions created by Evercore and provided to the Company and the Board.

7.     Accordingly, this action seeks to enjoin the Proposed Transaction.

8.     Absent judicial intervention, the Proposed Transaction will be consummated, resulting in irreparable injury to Plaintiff.  This action seeks to enjoin the Proposed Transaction.

## PARTIES

9.     Plaintiff is a citizen of California and, at all times relevant hereto, has been a Vocera stockholder.

10.    Defendant Vocera provides secure, integrated, and intelligent communication and workflow solutions that empowers mobile workers in healthcare, hospitality, retail, energy, education, and other mission-critical mobile work environments in the United States and internationally. Vocera is incorporated under the laws of the State of Delaware and has its principal place of business at 525 Race Street, San Jose, CA.  Shares of Vocera common stock are traded on the New York Stock Exchange under the symbol "VCRA."

11.    Defendant John N. McMullen ("McMullen") has been a Director of the Company at all relevant times.

12.    Defendant Sharon L. O'Keefe ("O'Keefe") has been a director of the Company

1  at all relevant times.

2       13.    Defendant Mike Burkland ("Burkland") has been a director of the Company at

3  all relevant times.

4       14.    Defendant Ronald A. Paulus ("Paulus") has been a director of the Company at

5  all relevant times.

6       15.    Defendant Bharat Sundaram ("Sundaram") has been a director of the Company at

7  all relevant times.

8       16.    Defendant Julie Iskow ("Iskow") has been a director of the Company at all relevant

9  times.

10       17.    Defendant Brent D. Lang ("Lang") has been a director of the Company at all

11  relevant times. In addition, Lang serves as the Company's Chief Executive Officer ("CEO").

12       18.    Defendant Alexa King ("King") has been a director of the Company at all relevant

13  times.

14       19.    Defendant Howard E. Janzen ("Janzen") has been a director of the Company at all

15  relevant times.

16       20.    Defendants identified in ¶¶ 10 - 19 are collectively referred to as the "Individual

17  Defendants."

18       21.    Non-Party Parent is a Stryker Corporation operates as a medical technology

19  company. Parent was founded in 1941 and is headquartered in Kalamazoo, Michigan. Shares of

20  Parent common stock are traded on the New York Stock Exchange under the symbol "SYK".

21       22.    Non-Party Merger Sub is a wholly owned subsidiary of Parent created to effectuate

22  the Proposed Transaction.

23                       **JURISDICTION AND VENUE**

24       23.    This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange

25  Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges

26  violations of Sections 14(a) and 20(a) of the Exchange Act.  This action is not a collusive one to

27  confer jurisdiction on a court of the United States, which it would not otherwise have.  The Court

28

1  has supplemental jurisdiction over any claims arising under state law pursuant to 28 U.S.C. § 1367.

2      24.    Personal jurisdiction exists over each defendant either because the defendant

3  conducts business in or maintains operations in this District or is an individual who is either present

4  in this District for jurisdictional purposes or has sufficient minimum contacts with this District as

5  to render the exercise of jurisdiction over defendant by this Court permissible under traditional

6  notions of fair play and substantial justice.

7      25.    Venue is proper in this District pursuant to 28 U.S.C. § 1391, because Vocera

8  maintains its principal offices in this district, and each of the Individual Defendants, as Company

9  officers or directors, has extensive contacts within this District.

10              **THE INDIVIDUAL DEFENDANTS' FIDUCAIRY DUTIES**

11     26.    By reason of the Individual Defendants' positions with the Company as officers

12 and/or directors, said individuals are in a fiduciary relationship with Vocera and owe the public

13 stockholders of the Company, including Plaintiff, the duties of due care, loyalty, and good faith.

14     27.    By virtue of their positions as directors and/or officers of Vocera, the Individual

15 Defendants, at all relevant times, had the power to control and influence, and did control and

16 influence and cause Vocera to engage in the practices complained of herein.

17     28.    Each of the Individual Defendants are required to act with due care, loyalty, good

18 faith and in the best interests of the Company public stockholders including Plaintiff. To diligently

19 comply with these duties, directors of a corporation must:

20         a.  act with the requisite diligence and due care that is reasonable under the

21             circumstances;

22         b.  act in the best interest of the Company and its public stockholders,

23             including Plaintiff;

24         c.  use reasonable means to obtain material information relating to a given

25             action or decision;

26         d.  refrain from acts involving conflicts of interest between the fulfillment

27             of their roles in the Company and the fulfillment of any other roles or

1    their personal affairs;

2    e.   avoid competing against the company or exploiting any business

3         opportunities of the company for their own benefit, or the benefit of

4         others; and

5    f.   disclose to the Company all information and documents relating to the

6         company's affairs that they received by virtue of their positions in the

7         Company.

8    29.   In accordance with their duties of loyalty and good faith, the Individual

9    Defendants, as directors and/or officers of Vocera, are obligated to refrain from:

10   a.    participating in any transaction where the directors' or officers'

11         loyalties are divided;

12   b.    participating in any transaction where the directors or officers are

13         entitled to receive personal financial benefit not equally shared by the

14         Company or its public stockholders including Plaintiff; and/or

15   c.    unjustly enriching themselves at the expense or to the detriment of

16         the Company or its stockholders including Plaintiff.

17   30.   Plaintiff alleges herein that the Individual Defendants, separately and together, in

18   connection with the Proposed Transaction, violated, and are violating, the fiduciary duties they

19   owe to Plaintiff as a public stockholder of Vocera, including their duties of loyalty, good faith, and

20   due care.

21   31.   As a result of the Individual Defendants' divided loyalties, Plaintiff will not receive

22   adequate, fair or maximum value for his Vocera common stock in the Proposed Transaction.

23                              **SUBSTANTIVE ALLEGATIONS**

24

*Company Background*

25

26   32.   Vocera provides secure, integrated, and intelligent communication and workflow

27   solutions that empowers mobile workers in healthcare, hospitality, retail, energy, education, and

28

other mission-critical mobile work environments in the United States and internationally. The company's communication solution integrates with other clinical systems, including electronic health records, nurse call systems, and patient monitoring, as well as to provide critical data, alerts, alarms, and clinical context that enable workflow.

33.    The Company also offers Vocera Communication and Workflow System, a software platform, which connects communication devices, such as hands-free, wearable, and voice-controlled Smartbadge and badges, as well as third-party mobile devices; and Vocera Care Experience, a hosted software suite that coordinates and streamlines provider-to-patient and provider-to-provider communication and clinical rounding to enhance quality of care, patient and staff experience, reduce care provider's risk, and improve reimbursements, as well as Vocera Ease, a cloud-based communication platform and mobile application to enhance the patient experience by enabling friends and family members to receive timely updates about the progress of their loved one in the hospital. In addition, the company provides professional, software maintenance, and technical support services; and classroom training, distance learning, or customized courseware for systems administrators, IT and industry-specific professionals, and end-user educators.

34.    As of December 31, 2020, the company provided its solutions to approximately 1,900 healthcare facilities, including large hospital systems, small and medium-sized local hospitals, clinics, surgery centers, and aged-care facilities. It sells its products through direct sales force, resellers, and distributors. The company was incorporated in 2000 and is headquartered in San Jose, California.

35.    The Company's most recent financial performance press release, revealing financial results from the quarter preceding the announcement of the Proposed Transaction, indicated sustained and solid financial performance. For example, in the October 28, 2021 press release announcing its 2021 Q3 financial results, the Company highlighted such milestones as total revenue of $63.6 million, up 18% compared to $53.8 million last year, GAAP net income of $2.1 million compared to $4.2 million last year Adjusted EBITDA of $15.3 million compared to $13.5 million last year.

36.     Speaking on these positive results, CEO Defendant Lang commented on the Company's positive financial results as follows, "The third quarter was another fantastic quarter for our business with strong growth and customer success," ....."Our market leadership in both the commercial and federal healthcare markets continued with impressive bookings and revenue growth, demonstrating the value of our unique solutions and the strong execution by our team."

37.     The results from earlier in 2021 told the same story. When the Company announced its Q2 2021 earnings on July 29. 2021, it highlighted similar success, posting results such as total revenue of $56.2 million, up 19% compared to $47.3 million last year.

38.     These positive results are not an anomaly, but rather, are indicative of a trend of continued financial success and future potential success by Vocera.  Clearly, based upon these positive financial results and outlook, the Company is likely to have tremendous future success.

39.     Despite this upward trajectory and continually increasing financial results, the Individual Defendants have caused Vocera to enter into the Proposed Transaction without providing requisite information to Vocera stockholders such as Plaintiff.

***The Flawed Sales Process***

40.     As detailed in the Recommendation Statement, the process deployed by the Individual Defendants was flawed and inadequate, was conducted out of the self-interest of the Individual Defendants and was designed with only one concern in mind – to effectuate a sale of the Company by any means possible.

41.     Notably, the Recommendation Statement indicates that an "informal advisory team" of the Board members and members of the management team was created to "help advise" Vocera management regarding the sales process. However, the Recommendation Statement indicates is silent as to whether this informal advisory team was not delegated any actual authority. Moreover, the Recommendation Statement clearly indicates that Company insiders sat on this informal advisory team.  The Recommendation Statement fails to indicate why a proper, formal, committee of disinterested and independent directors was not created to run the sales process

42.     In addition, the Recommendation Statement is silent as to the nature of the

confidentiality agreements entered into between the Company and potentially interested third parties, including Stryker, throughout the sales process, if any, and whether these agreements differ from each other, and if so in what way. The Recommendation Statement also fails to disclose all specific conditions under which any standstill provision contained in any entered confidentiality agreement entered into between the Company and any potentially interested third parties, including Stryker, throughout the sales process, if any, would fall away

43.   It is not surprising, given this background to the overall sales process, that it was conducted in an inappropriate and misleading manner.

***The Proposed Transaction***

44.   On January 6, 2022, Stryker issued a press release announcing the Proposed Transaction. The press release stated, in relevant part:

> **Kalamazoo, Michigan** – January 6, 2022 – Stryker (NYSE: SYK) announced today a definitive merger agreement to acquire all of the issued and outstanding shares of common stock of Vocera Communications, Inc. (NYSE: VCRA) for $79.25 per share, or a total equity value of approximately $2.97 billion and a total enterprise value of approximately $3.09 billion (including convertible debt). Vocera, which was founded in 2000, has emerged as a leading platform in the digital care coordination and communication category. The importance of this growing segment has continued to expand throughout the pandemic as it aims to reduce cognitive overload for caregivers and enables them to deliver the best patient care possible.
>
> Vocera brings a highly complementary and innovative portfolio to Stryker's Medical division that will address the increasing need for hospitals to connect caregivers and disparate data-generating medical devices, which will help drive efficiencies and improve safety and outcomes. Vocera's highly developed software competency, unique and innovative hardware solutions, and the ability to securely enable remote communication between patients and their families, complements Stryker's Advanced Digital Healthcare offerings. The combined business will further advance Stryker's focus on preventing adverse events throughout the continuum of care.
>
> "This acquisition underscores our commitment and focus on our customer," stated Kevin Lobo, Chair and Chief Executive Officer, Stryker. "Vocera will help Stryker significantly accelerate our digital aspirations to improve the lives of caregivers and patients."

"Today's milestone represents an exciting opportunity for Vocera given the clear alignment of mission, goals and culture between our two organizations and our ability to drive even greater economic and clinical value for our customers," said Brent Lang, Chairman and Chief Executive Officer, Vocera.

Under the terms of the merger agreement, Stryker will commence a tender offer for all outstanding shares of common stock of Vocera for $79.25 per share in cash. The boards of directors of both Stryker and Vocera have unanimously approved the transaction. The closing of the transaction is subject to expiration or termination of the applicable waiting period under the Hart-Scott-Rodino Antitrust Improvements Act, completion of the tender offer and other customary closing conditions.

The acquisition is expected to close in the first quarter of 2022 and is expected to have a neutral impact to net earnings per diluted share in 2022.

*The Inadequate Merger Consideration*

45.     Significantly, the Company's financial prospects, opportunities for future growth, and investment in innovation establish the inadequacy of the merger consideration.

46.     First, the compensation afforded under the Proposed Transaction to Company stockholders significantly undervalues the Company.  The proposed valuation does not adequately reflect the intrinsic value of the Company.

47.     Moreover, post-closure, Plaintiff will be frozen out of his ownership interest in the Company and will not be able to reap the rewards of the Company's future prospects.

48.     It is clear from these statements and the facts set forth herein that this deal is designed to maximize benefits for Stryker at the expense of Vocera stockholders, including specifically Plaintiff, which clearly indicates that Plaintiff in his capacity as a Vocera stockholder was not an overriding concern in the formation of the Proposed Transaction.

*Preclusive Deal Mechanisms*

49.     The Merger Agreement contains certain provisions that unduly benefit Stryker by making an alternative transaction either prohibitively expensive or otherwise impossible. Significantly, the Merger Agreement contains a termination fee provision that is especially onerous and impermissible.  Notably, in the event of termination, the merger agreement requires Vocera to

pay up to $108.7 million to Stryker, if the Merger Agreement is terminated under certain circumstances. Moreover, under one circumstance, Vocera must pay this termination fee even if it consummates any competing Alternative Acquisition Agreement (as defined in the Merger Agreement) *within 12 months following the termination* of the Merger Agreement. The termination fee will make the Company that much more expensive to acquire for potential purchasers. The termination fee in combination with other preclusive deal protection devices will all but ensure that no competing offer will be forthcoming.

50. The Merger Agreement also contains a "No Solicitation" provision that restricts Vocera from considering alternative acquisition proposals by, *inter alia*, constraining Vocera's ability to solicit or communicate with potential acquirers or consider their proposals. Specifically, the provision prohibits the Company from directly or indirectly soliciting, initiating, proposing or inducing any alternative proposal, but permits the Board to consider an unsolicited bona fide acquisition proposal if it constitutes or is reasonably calculated to lead to a "*Superior Company Proposal*" as defined in the Merger Agreement.

51. Moreover, the Merger Agreement further reduces the possibility of a topping offer from an unsolicited purchaser. Here, the Individual Defendants agreed to provide Stryker information in order to match any other offer, thus providing Stryker access to the unsolicited bidder's financial information and giving Stryker the ability to top the superior offer. Thus, a rival bidder is not likely to emerge with the cards stacked so much in favor of Stryker.

52. These provisions, individually and collectively, materially and improperly impede the Board's ability to fulfill its fiduciary duties with respect to fully and fairly investigating and pursuing other reasonable and more valuable proposals and alternatives in the best interests Plaintiff in its capacity as a public Company stockholder.

53. Accordingly, the Company's true value is compromised by the consideration offered in the Proposed Transaction.

**Potential Conflicts of Interest**

54. The breakdown of the benefits of the deal indicate that Vocera insiders are the

primary beneficiaries of the Proposed Transaction, not the Company's public stockholders such as Plaintiff. The Board and the Company's executive officers are conflicted because they will have secured unique benefits for themselves from the Proposed Transaction not available to Plaintiff as a public stockholder of Vocera.

55.     Notably, Company insiders, currently own large, illiquid portions of Company stock, which will be exchanged for the merger consideration upon the consummation of the Proposed Transaction as follows:

**Table of Share-Related Payments**

| Name | Number of Shares Owned (#) | Total Offer Price Payable for Shares ($) |
|---|---|---|
| **Executive Officers(1)** | | |
| Brent D. Lang(2) | 252,045 | 19,974,566 |
| Steven J. Anheier | 3,969 | 314,543 |
| M. Bridget Duffy | 13,343 | 1,057,433 |
| Paul T. Johnson | 64,558 | 5,116,222 |
| Douglas A. Carlen | 29,485 | 2,336,686 |
| Justin R. Spencer | 54,452 | 4,315,321 |
| **Non-Employee Directors** | | |
| Michael Burkland | 40,558 | 3,214,222 |
| Julie Iskow | 12,041 | 954,249 |
| Howard E. Janzen | 48,687 | 3,858,445 |
| Alexa King | 37,729 | 2,990,023 |
| John N. McMullen | 20,950 | 1,660,288 |
| Sharon L. O'Keefe | 39,687 | 3,145,195 |
| Ronald A. Paulus | 11,815 | 936,339 |
| Bharat Sundaram | 12,041 | 954,249 |

56.     Additionally, Company insiders, currently own Company options, restricted stock units, and other equity awards, which will be exchanged for the merger consideration upon the consummation of the Proposed Transaction as follows:

| Name | Vested Options | | Unvested RSUs | | Unvested PSUs | | Total Cash Consideration Payable ($)(7) |
|---|---|---|---|---|---|---|---|
| | Number of Underlying Shares (#)(1) | Cash Consideration Payable ($)(2) | Number of Underlying Shares (#)(3) | Cash Consideration Payable ($)(4) | Number of Underlying Shares (#)(5) | Cash Consideration Payable ($)(6) | |
| *Executive Officers:* | | | | | | | |
| Brent D. Lang | 3 | 199 | 193,496 | 15,334,558 | 254,184 | 20,144,082 | 35,478,839 |
| Steven J. Anheier | — | — | 29,273 | 2,319,885 | 40,874 | 3,239,265 | 5,559,150 |
| Douglas A. Carlen | — | — | 50,114 | 3,971,535 | 54,266 | 4,300,581 | 8,272,116 |
| M. Bridget Duffy | — | — | 50,114 | 3,971,535 | 54,266 | 4,300,581 | 8,272,116 |
| Paul T. Johnson | 48,552 | 3,088,754 | 66,568 | 5,275,514 | 87,649 | 6,946,183 | 15,310,451 |
| Justin R. Spencer | — | — | — | — | — | — | |

*Non-Employee Directors:*

| | | | | | | |
|---|---|---|---|---|---|---|
| Michael Burkland | — | — | 4,379 | 347,036 | — | — | 347,036 |
| Julie Iskow | — | — | 4,379 | 347,036 | — | — | 347,036 |
| Howard E. Janzen | — | — | 4,379 | 347,036 | — | — | 347,036 |
| Alexa King | — | — | 4,379 | 347,036 | — | — | 347,036 |
| John N. McMullen | — | — | 4,379 | 347,036 | — | — | 347,036 |
| Sharon L. O'Keefe | — | — | 4,379 | 347,036 | — | — | 347,036 |
| Ronald A. Paulus | — | — | 4,379 | 347,036 | — | — | 347,036 |
| Bharat Sundaram | — | — | 4,379 | 347,036 | — | — | 347,036 |

57.     In addition, certain employment agreements with certain Vocera executives, entitle such executives to severance packages should their employment be terminated under certain circumstances.  These 'golden parachute' packages are significant, and will grant each director or officer entitled to them millions of dollars, compensation not shared by Plaintiff and will be paid out as follows:

**Golden Parachute Compensation**

| Name(1) | Cash ($)(1) | Equity ($)(2) | Perquisites/Benefits ($)(3) | Total ($)(4) |
|---|---|---|---|---|
| Brent D. Lang | 1,711,884 | 35,478,640 | 51,561 | 37,242,085 |
| Steven J. Anheier | 512,328 | 5,559,150 | 43,158 | 6,114,636 |
| Douglas A. Carlen | 337,397 | 8,272,115 | 32,369 | 8,641,881 |
| M. Bridget Duffy | 359,598 | 8,272,115 | 22,805 | 8,654,518 |
| Paul T. Johnson | 565,830 | 12,221,697 | 43,158 | 12,830,685 |

58.     The Recommendation Statement also fails to adequately disclose communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. Communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. This information is necessary for Plaintiff to understand potential conflicts of interest of management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of the Company's stockholders.

59.     Thus, while the Proposed Transaction is not in the best interests of Vocera, Plaintiff or Company stockholders, it will produce lucrative benefits for the Company's officers and directors.

***The Materially Misleading and/or Incomplete Recommendation Statement***

60.     On January 25, 2022, the Vocera Board caused to be filed with the SEC a materially

- 13 -
COMPLAINT

misleading and incomplete Recommendation Statement, that in violation the Exchange Act and breach of their fiduciary duties, failed to provide Plaintiff in his capacity as a Company stockholder with material information and/or provides materially misleading information critical to the total mix of information available to Plaintiff concerning the financial and procedural fairness of the Proposed Transaction.

*Omissions and/or Material Misrepresentations Concerning the Sales Process leading up to the Proposed Transaction*

61.    Specifically, the Recommendation Statement fails to disclose material information concerning the process conducted by the Company and the events leading up to the Proposed Transaction.  In particular, the Recommendation Statement fails to disclose:

a.  The specific reasoning as to why the informal advisory team that was created by the Board to aid in running the sales process contained Board members who were not disinterested or independent and/or company insiders such as members of management;

b.  The specific reasoning as to why the informal advisory team created by the Board to aid in running the sales process was not delegated any actual authority to run the sales process;

c.  Whether the terms of any confidentiality agreements entered during the sales process between Vocera on the one hand, and any other third party (including Stryker), if any, on the other hand, differed from one another, and if so, in what way;

d.  All specific conditions under which any standstill provision contained in any entered confidentiality agreement entered into between the Company and potentially interested third parties (including Stryker) throughout the sales process, if any, would fall away; and

e.  The Recommendation Statement also fails to adequately disclose communications regarding post-transaction employment during the negotiation

of the underlying transaction must be disclosed to stockholders. Communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. This information is necessary for stockholders to understand potential conflicts of interest of management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of the Company's stockholders

*Omissions and/or Material Misrepresentations Concerning Vocera's Financial Projections*

62.     The Recommendation Statement fails to provide material information concerning financial projections for Vocera provided by Vocera management and relied upon by Evercore in its analyses.   The Recommendation Statement discloses management-prepared financial projections for the Company which are materially misleading.

63.     Notably, in connection with its fairness opinion rendered to the Company Board regarding the Proposed Transaction, Evercore notes that it reviewed, "certain internal projected financial data relating to Vocera prepared and furnished to us by management of Vocera, as approved for Evercore's use by Vocera, which we refer to as the Management Projections."

64.     The Recommendation Statement, therefore, should have, but fails to provide, certain information in the projections that Vocera management provided to the Board and Evercore.  Courts have uniformly stated that "projections … are probably among the most highly-prized disclosures by investors.  Investors can come up with their own estimates of discount rates or [] market multiples.  What they cannot hope to do is replicate management's inside view of the company's prospects."  *In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 201-203 (Del. Ch. 2007).

65.     With regard to the *Management Projections* for each of the *Base Case*, *Upside Case*, and *Downside Case* the Recommendation Statement fails to disclose material line items for the following metrics:

     a.   Non-GAAP Gross Profit, including all underlying necessary inputs and assumptions, including specifically: total cost of revenue, amortization of acquired intangibles, restructuring costs, acquisition-related expenses, and other non-recurring charges;

     b.   Non-GAAP Total Operating Expenses, including all underlying necessary inputs and assumptions, including specifically: total operating expenses, amortization of acquired intangibles, restructuring costs, acquisition-related expenses, and other non-recurring charges;

     c.   Non-GAAP Operating Income, including all underlying necessary inputs and assumptions, including specifically: GAAP net earnings (loss) before tax, net interest expense, amortization of acquired intangibles, restructuring costs, acquisition-related expenses, and other non-recurring charges; and

     d.   Adjusted EBITDA, including all underlying necessary inputs and assumptions, including specifically: GAAP net earnings (loss) before tax, net interest expense, amortization, restructuring costs, acquisition-related expenses, and other non-recurring charges.

66.    The Recommendation Statement also fails to disclose a reconciliation of all non-GAAP to GAAP metrics utilized in the projections.

67.    This information is necessary to provide Plaintiff in his capacity as a Company stockholder a complete and accurate picture of the sales process and its fairness. Without this information, Plaintiff is not fully informed as to Defendants' actions, including those that may have been taken in bad faith, and cannot fairly assess the process.

68.    Without accurate projection data presented in the Recommendation Statement, Plaintiff is unable to properly evaluate the Company's true worth, the accuracy of Evercore's financial analyses, or make an informed decision whether to tender his shares in favor of the Proposed Transaction. As such, the Board is in violation of the Exchange Act and in breach of their fiduciary duties by failing to include such information in the Recommendation Statement.

<u>*Omissions and/or Material Misrepresentations Concerning the Financial Analyses by*</u>
<u>*Evercore*</u>

69.     In the Recommendation Statement, Evercore describes its fairness opinion and the various valuation analyses performed to render such opinion.  However, the descriptions fail to include necessary underlying data, support for conclusions, or the existence of, or basis for, underlying assumptions.  Without this information, one cannot replicate the analyses, confirm the valuations or evaluate Evercore's fairness opinion.

70.     With respect to the *Discounted Cash Flow Analysis*, the Recommendation Statement fails to disclose the following:

    a.   The calculated terminal values for Vocera;

    b.   The specific inputs and assumptions used to determine the utilized perpetuity growth rate range of 5.0% to 6.0%;

    c.   The specific inputs and assumptions used to determine the utilized terminal multiple ranges of, 15.0x—20.0x, 20.0x—25.0x, and 10.0x—15.0x, as applied to Vocera's estimated Adjusted EBITDA in the Terminal Year;

    d.   The specific inputs and assumptions used to determine the utilized discount rate range of 8.0% to 9.0%;

    e.   Vocera's estimated weighted average cost of capital; and

    f.   The number of fully diluted Company Shares as of December 31, 2021.

71.     With respect to the *Selected Public Company Trading Analysis*, the Recommendation Statement fails to disclose the following:

    a.   The specific inputs and assumptions used to determine the utilized reference range of enterprise value / revenue multiples of 8.0x - 11.0x;

    b.   The specific inputs and assumptions used to determine the utilized reference range of enterprise value / revenue multiples of 7.0x—9.0x; and

    c.   The number of fully diluted Company Shares as of December 31, 2021.

72.     With respect to the *Selected Transactions Analysis*, the Recommendation Statement

1  fails to disclose the following:

2         a.  The specific inputs and assumptions used to determine the utilized reference
3             range of 9.0x - 10.0x LTM 2021 Revenue;

4         b.  The specific inputs and assumptions used to determine the utilized reference
5             range of 8.0x - 9.0x NTM 2022 Revenue;

6         c.  The specific transactions analyzed;

7         d.  The specific metrics for the transactions analyzed;

8         e.  The dates on which each selected transaction was announced;

9         f.  The dates on which each selected transaction closed; and

10        g.  The value of each selected transaction.

11        73.  With respect to the *Equity Research Analyst Price Targets*, the Recommendation
12  Statement fails to disclose the following:

13        a.  The specific price targets analyzed; and

14        b.  The identity of the equity research analysts and/or firms that published the
15            utilized price targets.

16        74.  These disclosures are critical for Plaintiff to be able to make an informed decision
17  on whether to tender his shares in favor of the Proposed Transaction.

18        75.  Without the omitted information identified above, Plaintiff is missing critical
19  information necessary to evaluate whether the proposed consideration truly maximizes his value
20  and serves his interest as a stockholder.  Moreover, without the key financial information and
21  related disclosures, Plaintiff cannot gauge the reliability of the fairness opinion and the Board's
22  determination that the Proposed Transaction is in his best interests as a public Vocera stockholder.
23  As such, the Board has violated the Exchange Act and breached their fiduciary duties by failing to
24  include such information in the Recommendation Statement.

25                              **FIRST COUNT**

26                         **Breach of Fiduciary Duties**

27                     <u>**(Against the Individual Defendants)**</u>

28

1    76.    Plaintiff repeats all previous allegations as if set forth in full herein.

2    77.    The Individual Defendants have violated their fiduciary duties of care, loyalty and
3    good faith owed to Plaintiff in his capacity as a Company public stockholder.

4    78.    By the acts, transactions and courses of conduct alleged herein, Defendants,
5    individually and acting as a part of a common plan, are attempting to unfairly deprive Plaintiff of
6    the true value of his investment in Vocera.

7    79.    As demonstrated by the allegations above, the Individual Defendants failed to
8    exercise the care required, and breached their duties of loyalty and good faith owed to the Plaintiff
9    in his capacity as a Company public stockholder by entering into the Proposed Transaction through
10   a flawed and unfair process and failing to take steps to maximize the value of the Company to
11   Plaintiff in his capacity as a Company public stockholder.

12   80.    Indeed, Defendants have accepted an offer to sell Vocera at a price that fails to
13   reflect the true value of the Company, thus depriving Plaintiff in his capacity as a Company public
14   stockholder of the reasonable, fair and adequate value of his shares.

15   81.    Moreover, the Individual Defendants breached their duty of due care and candor by
16   failing to disclose to Plaintiff in his capacity as a Company public stockholder all material
17   information necessary for it to make an informed decision on whether to tender his shares in favor
18   of the Proposed Transaction.

19   82.    The Individual Defendants dominate and control the business and corporate affairs
20   of Vocera, and are in possession of private corporate information concerning Vocera's assets,
21   business and future prospects.  Thus, there exists an imbalance and disparity of knowledge and
22   economic power between them and Plaintiff in his capacity as a Company public stockholder
23   which makes it inherently unfair for them to benefit their own interests to the exclusion of Plaintiff.

24   83.    By reason of the foregoing acts, practices and course of conduct, the Individual
25   Defendants have failed to exercise due care and diligence in the exercise of their fiduciary
26   obligations toward Plaintiff in his capacity as a Company public stockholder.

27   84.    As a result of the actions of the Individual Defendants, Plaintiff in his capacity as a

28

Company public stockholder will suffer irreparable injury in that he has not and will not receive its fair portion of the value of Vocera's assets and has been and will be prevented from obtaining a fair price for his holdings of Vocera common stock.

85.     Unless the Individual Defendants are enjoined by the Court, they will continue to breach their fiduciary duties owed to Plaintiff in his capacity as a Company public stockholder, all to the irreparable harm of the Plaintiff.

86.     Plaintiff has no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury which Defendants' actions threaten to inflict.

## SECOND COUNT

### Aiding and Abetting the Board's Breaches of Fiduciary Duty

### (Against Defendant Vocera)

87.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

88.     Defendant Vocera knowingly assisted the Individual Defendants' breaches of fiduciary duty in connection with the Proposed Transaction, which, without such aid, would not have occurred.

89.     As a result of this conduct, Plaintiff in his capacity as a Company public stockholder will suffer irreparable injury in that he has not and will not receive his fair portion of the value of Vocera's assets and has been and will be prevented from obtaining a fair price for its holdings of Vocera common stock.

90.     Plaintiff has no adequate remedy at law.

## THIRD COUNT

### Violations of Section 14(e) of the Exchange Act

### (Against All Defendants)

91.     Plaintiff repeats all previous allegations as if set forth in full herein.

92.     Defendants have disseminated the Recommendation Statement with the intention

of soliciting stockholders, including Plaintiff, to tender their shares in favor of the Proposed Transaction.

93.    Section 14(e) of the Exchange Act provides that in the solicitation of shares in a tender offer, "[i]t shall be unlawful for any person to make any untrue statement of a material fact or omit to state any material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading[.].

94.    The Recommendation Statement was prepared in violation of Section 14(e) because it is materially misleading in numerous respects and omits material facts, including those set forth above.  Moreover, in the exercise of reasonable care, Defendants knew or should have known that the Recommendation Statement is materially misleading and omits material facts that are necessary to render them non-misleading.

95.    The Individual Defendants had actual knowledge or should have known of the misrepresentations and omissions of material facts set forth herein.

96.    The Individual Defendants were at least negligent in filing a Recommendation Statement that was materially misleading and/or omitted material facts necessary to make the Recommendation Statement not misleading.

97.    The misrepresentations and omissions in the Recommendation Statement are material to Plaintiff, and Plaintiff will be deprived of his entitlement to decide whether to tender its shares on the basis of complete information if such misrepresentations and omissions are not corrected prior to the expiration of the tender offer period regarding the Proposed Transaction.

98.    Plaintiff has no adequate remedy at law.

### FOURTH COUNT

### Violations of Section 14(d)(4) of the Exchange Act and SEC Rule 14d-9

### (Against all Defendants)

99.    Plaintiff repeats and realleges all previous allegations as if set forth in full herein.

100.    Defendants have disseminated the Recommendation Statement with the intention of soliciting stockholders, including Plaintiff, to tender their shares in favor of the Proposed

1 | Transaction.

2 |      101.    Section 14(d)(4) requires Defendants to make full and complete disclosure in
3 | connection with a tender offer.

4 |      102.    SEC Rule 14d-9 requires a Company's directors to, furnish such additional
5 | information, if any, as may be necessary to make the required statements, in light of the
6 | circumstances under which they are made, not materially misleading.

7 |      103.    Here, the Recommendation Statement violates both Section 14(d)(4) and SEC Rule
8 | 14d-9 because it because it is materially misleading in numerous respects, omits material facts,
9 | including those set forth above and Defendants knowingly or recklessly omitted the material facts
10 | from the Recommendation Statement.

11 |      104.    The misrepresentations and omissions in the Recommendation Statement are
12 | material to Plaintiff, and Plaintiff will be deprived of his entitlement to decide whether to tender
13 | his shares on the basis of complete information if such misrepresentations and omissions are not
14 | corrected prior to the expiration of the tender offer period regarding the Proposed Transaction.

15 |      105.    Plaintiff has no adequate remedy at law.

16 | **FIFTH COUNT**

17 | **Violations of Section 20(a) of the Exchange Act**

18 | **(Against all Individual Defendants)**

19 |      106.    Plaintiff repeats all previous allegations as if set forth in full herein.

20 |      107.    The Individual Defendants were privy to non-public information concerning the
21 | Company and its business and operations via access to internal corporate documents, conversations
22 | and connections with other corporate officers and employees, attendance at management and
23 | Board meetings and committees thereof and via reports and other information provided to them in
24 | connection therewith.  Because of their possession of such information, the Individual Defendants
25 | knew or should have known that the Recommendation Statement was materially misleading to
26 | Plaintiff in his capacity as a Company stockholder.

27 |      108.    The Individual Defendants were involved in drafting, producing, reviewing and/or

28 |

disseminating the materially false and misleading statements complained of herein.  The Individual Defendants were aware or should have been aware that materially false and misleading statements were being issued by the Company in the Recommendation Statement and nevertheless approved, ratified and/or failed to correct those statements, in violation of federal securities laws.  The Individual Defendants were able to, and did, control the contents of the Recommendation Statement.  The Individual Defendants were provided with copies of, reviewed and approved, and/or signed the Recommendation Statement before its issuance and had the ability or opportunity to prevent its issuance or to cause it to be corrected.

109.   The Individual Defendants also were able to, and did, directly or indirectly, control the conduct of Vocera's business, the information contained in its filings with the SEC, and its public statements.  Because of their positions and access to material non-public information available to them but not the public, the Individual Defendants knew or should have known that the misrepresentations specified herein had not been properly disclosed to and were being concealed from Plaintiff and Company, and that the Recommendation Statement was misleading.  As a result, the Individual Defendants are responsible for the accuracy of the Recommendation Statement and are therefore responsible and liable for the misrepresentations contained herein.

110.   The Individual Defendants acted as controlling persons of Vocera within the meaning of Section 20(a) of the Exchange Act.  By reason of their position with the Company, the Individual Defendants had the power and authority to cause Vocera to engage in the wrongful conduct complained of herein.   The Individual Defendants controlled Vocera and all of its employees.  As alleged above, Vocera is a primary violator of Section 14 of the Exchange Act and SEC Rule 14a-9.  By reason of their conduct, the Individual Defendants are liable pursuant to section 20(a) of the Exchange Act.

WHEREFORE, Plaintiff demands injunctive relief, in his favor and against the Defendants, as follows:

A.     Enjoining the Proposed Transaction;

B.     In the event Defendants consummate the Proposed Transaction, rescinding it and

setting it aside or awarding rescissory damages to Plaintiff;

C.      Declaring and decreeing that the Merger Agreement was agreed to in breach of the fiduciary duties of the Individual Defendants and is therefore unlawful and unenforceable;

D.      Directing the Individual Defendants to exercise their fiduciary duties to disseminate a Recommendation Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

E.      Directing defendants to account to Plaintiff for damages sustained because of the wrongs complained of herein;

F.      Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

G.      Granting such other and further relief as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury on all issues which can be heard by a jury.

Dated: January 27, 2022

**BRODSKY & SMITH**

By: _____

Evan J. Smith, Esquire (SBN 242352)
esmith@brodskysmith.com
Ryan P. Cardona, Esquire (SBN 302113)
rcardona@brodskysmith.com
9595 Wilshire Blvd., Ste. 900
Phone: (877) 534-2590
Facsimile (310) 247-0160

*Attorneys for Plaintiff*

COMPLAINT